IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 23-cr-00294-PAB

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-

DIANE DALMY,

        Defendant.

---

## MOTION FOR PERMISSION TO TRAVEL AND FOR OTHER RELIEF

---

I, Diane Dalmy, proceeding *pro se*, herewith request that the Court grant me permission to travel to Seattle, Washington, to visit my daughter on October 4, 2023, through October 8, 2023.

**Summary**

1.     In this *Motion,* I ask the Court to approve my plans to travel to Seattle, Washington, on October 4, 2023, to spend four days with my two daughters and my one daughter's fiancée and his parents in order to plan for a wedding and select a wedding dress for my younger daughter.

2.     I also ask the Court to correct the Probation Office's errors in accounting for my restitution payments in my case. Specifically, I ask that the Court direct that:

-     My restitution obligations are governed by the *Amended Judgment in a Criminal Case* (ECF 54), issued December 11, 2018, and not the *Judgment in a Criminal Case* (ECF 21), issued May 16, 2018;

- My obligation to pay 10% of my gross income commenced with gross income earned on and after my first day of supervised release, January 14, 2022;

- The *Amended Judgment in a Criminal Case* (ECF 54), issued December 11, 2018, does not require that I pay restitution on income earned in a calendar month by the 30th day of that month;

- A person on supervised release is entitled to pay restitution in arrears, submitting payment of the appropriate percentage along with her monthly report for the preceding month;

- My gross income for calendar year 2022 was $92,266.69, and included all of the social security paid to me ($30,391.20);

- The Clerk of the U.S. District Court for the District of Connecticut shows that it collected $7,843.34 in restitution on my account in calendar year 2022; and

- A payment for restitution owed in a calendar year is to be credited to the payor's obligation for that year, despite it being paid in January of the following year.

These directives are unremarkable matters of common sense.  However, as will be clear *infra,* a ruling is necessary.

**Facts**

3.     *The Travel Request:*   On August 21, 2023, I filed a request with my Probation Officer asking permission to fly from Denver, Colorado, to Seattle, Washington, on October 4, 2023, for a five-day visit with my daughter, Ashley, who is a law student there. *See* August 21, 2023, travel form, attached as **Exhibit 1**. I am to meet my other daughter, Marian Dougherty – a resident of Portland, Oregon – along with Ashley's fiancée, Kyle, and his mother.  We all plan to help Ashley and her fiancé plan their upcoming wedding. We have long-standing appointments with bridal shops to help Ashley select her wedding dress and planners to start planning for the wedding. It is a very important moment in Ashley's life and one in which I am eager to

participate as her mother. Selecting her wedding dress is a memorable occasion and as incredible
as she might imagine her wedding day to be

4.      As I have been instructed by the U.S. Probation Office, I did not let my daughter
buy a ticket for me in advance of seeking permission. I watched the cost of a ticket – which my
daughter was paying for – keep going up while I awaited permission. When I had heard nothing
from the U.S. Probation Office on my request in more than a week, I wrote to my Officer asking
for a decision. *See* August 30, 2023, email to Officer, attached as **Exhibit 2**.

5.      My Officer responded to my August 30th request to expedite on September 6,
telling me that she would "advise" me on my travel request by Friday, September 8. *See*
September 6, 2023, email from Officer, attached as **Exhibit 3**.

6.      I have been on supervised release since January 14, 2022, a period of 20 months.
This would have been my fourth trip outside of the District of Colorado since beginning
supervised release. Each of these trips was for the purpose of visiting my daughter Marian and
my grandchildren in Portland, Oregon, or my daughter Ashley in Issaquah, Washington, a suburb
of Seattle. For two of the prior three travel requests, my Officer has denied me permission to
travel, leaving me to petition the Court for permission. Judge Meyer granted the motion to
request permission to travel one day before departure early April and I had cancelled the trip to
ensure my daughter would not lose use of the tickets, which request was renewed in a subsequent
motion for Memorial Weekend  (which all motions filed were grantedgranted).

7.      At the same time as my request to travel was pending, my accountant completed
my 2022 taxes, and I filed them in a timely manner within an authorized extension. I sent my

officer a recapitulation of my income and restitution payments and a copy of my 2022 federal tax return on August 29, 2023. *See* August 29, 2023, email to Officer, attached as **Exhibit 4**.[1]

8.      On September 8, 2023, my Probation Officer denied my request to travel. *See* September 8, 2023, email from Officer, attached as **Exhibit 5**.  The Officer asserted that I should have paid $9,966.70 in restitution on a 2022 gross income of $92,666.91.[2]  She told me that I had a past-due balance of $1,759.73 and that "[o]nce this past due balance for 2022 is paid and up to date, you can re-submit your request for travel for reconsideration to the probation office." *Id.*

9.      *Restitution:*   The Officer provided me with a printout of a report from the United States District Court for the District of Connecticut.  That report is attached as **Exhibit 6**.  It shows that beginning with payments received after supervised release began (January 14, 2023), I made the following payments:

| | |
|---|---|
| Jan 25, 2022: | $  200.00 |
| Feb 23, 2022: | $  200.00 |
| Mar 24, 2022: | $  200.00 |
| Apr 24, 2022: | $  200.00 |
| May 24, 2022: | $  320.00 |
| Jun 24, 2022: | $  445.55 |
| Jul 24, 2022: | $  145.55 |
| Aug 17, 2022: | $  345.55 |
| Sep 15, 2022: | $  425.55 |
| Oct 18, 2022: | $  420.55 |
| Nov 22, 2022: | $  432.05 |
| Dec 22, 2022: | $  445.55 |

---

[1]      I have not included the complete Form 1040 in this filing. A copy of the first page, with personal identifying information redacted, is attached as the final page of **Exhibit 12**.

[2]      This claim to $9,966.70 in restitution on a 2022 gross income of $92,666.91 was an obvious clerical error.  She meant to claim total restitution due of $9,266.69 due, which is 10% of my reported gross revenue.

|                   |                          |
|-------------------|--------------------------|
| Jan 19, 2023:     | $  545.55[3]             |
| Total I paid:     | $4,325.90                |

I receive supplemental security income from the Social Security Administration. Pursuant to garnishment, 15% of that payment is withheld monthly and paid over to restitution. Restitution in 2022 was withheld as follows:

|                   |                          |
|-------------------|--------------------------|
| Jan 26, 2022:     | $  338.72                |
| Feb 23, 2022:     | $  338.72                |
| Mar 23, 2022:     | $  338.72                |
| Apr 27, 2022:     | $  339.62                |
| May 25, 2022:     | $  339.62                |
| Jun 22, 2022:     | $  339.62                |
| Jul 27, 2022:     | $  339.62                |
| Aug 24, 2022:     | $  339.62                |
| Sep 28, 2022:     | $  339.62                |
| Oct 26, 2022:     | $  336.37                |
| Nov 23, 2022:     | $  336.37                |
| Dec 28, 2022:     | $  336.37                |
| Total withheld:   | $4,062.99[4]             |

*See* Clerk's Report, attached as **Exhibit 6**.

10.     I responded to my Officer on September 12, 2023, explaining that her numbers were in error. *See* September 12, 2023, email to Officer, attached as **Exhibit 7**. I explained that:

- Because I began supervised release on January 14, 2022, income earned before that date was not subject to a 10% restitution payment. That amount, $4,476.16, should be deducted from the amount of 2022 income subject to my

---

[3]     The Officer refuses to credit this payment toward my 2022 restitution obligation. *See* ¶ 11, *infra.*

[4]     The Social Security Administration does not provide a monthly statement that reports the amount withheld for garnishment. I estimated the amount withheld, and thus underreported what was withheld for the first four months and overreported for the last eight months. The difference for the year was that I reported $ 115.41 more withheld than actually was withheld.

supervised release obligation. I took cash back from the deposit of $476.16 and deposited $4,000.00.

- The Probation Officer's math was wrong. The Officer stated that the Clerk reported I only paid $7,506.97 in restitution in 2022. However, Exhibit 6 indicates that Clerk received $7,843.34 from January 1, 2022, through December 31, 2022.

- The Clerk's report also shows I paid $545.55 in January 2023. This payment, like the other payments I made throughout 2022 and thus far in 2023 was made to address my restitution obligation on my December 2022 income of $8,913.86. Because the January 2023 payment was for December 2022 income, that payment is includable in the calculation of my 2022 restitution payments.

- I agreed that I had erroneously calculated my monthly income throughout 2022 using the $2,200.65 monthly payment I received. I should have calculated my gross income from SSI taking one-twelfth of the annual gross income, or $2,538.58. I did not realize this error until I received my completed tax return and saw the higher figure – which includes the withholding for Medicare and my restitution – on the tax form.

- With the foregoing adjustments, I should have paid $8,884.69 in restitution, which is 10% of my supervised release income of $88,846.94. I was short by $308.19 for the year.

I sent a check for $308.19 to the Clerk of the United States District Court on September 12, and provided a copy of that letter to my Officer. A copy of the September 12 letter transmitting that check is attached as **Exhibit 8**.

11.     My Officer responded with an email two days later, on Thursday, September 14, 2023, in which she averred that "[r]estitution as stated in your J&C is due by the 30th of each month of 10% of your gross income or $500 per month, whichever is greater." *See* September 14 email from Officer, attached as **Exhibit 9**. She again maintained that I was past due by "$1,759.72 just for 2022 restitution payments. This has been reviewed and decided by both probation and the Financial Litigation Unit (FLU) for the D/CT where your restitution is due." Finally, she refused to credit my January 2023 payment to 2022 restitution:

There has been no determination of payments you made for the 2023 year therefore, any payments made after December 31, 2022, has no reflection on your reported restitution paid for your income on your tax return for 2022 just as I wouldn't include or cite any income you made after December 31, 2023 and expect it be claimed on your 2022 tax return.

*Id.*

12.     Because I did not want to disappoint or embarrass my daughter by not coming for the wedding planning session with her prospective in-laws (and wanted to see both my daughters), I sent the Clerk of the United States District Court for the District of Connecticut an additional check for $ 1,451.53. *See* September 14, 2023, letter, attached as **Exhibit 10**. It was clear to me that my Officer demanded full payment of the amount she believed I owed as the price of approving my seeing my daughters. I reported to my Officer that these amounts had been paid by check, just as I had reported doing and had in fact done every month for the past 20 months.

13.     However, the next day – last Friday, September 15, 2023, – my Officer wrote me to dispute my interpretation of my supervised release obligations, averring that:

> your J&C does not require you to pay 10% of your income while you are on "supervised release", your obligation simply states "The defendant shall pay any restitution that is imposed by this judgment, [jointly and severally with defendants in related cases], in a lump sum immediately.  If the defendant is unable to pay the full balance in a lump sum, any remaining balance is payable at a rate of0020not less than $500 per month or 10% of the defendant's gross monthly income, whichever is greater. *[sic]* The monthly payment schedule may be adjusted based on the defendant's ability to pay as determined by the probation officer and approved by the Court."
>
> Please note, you are not only subject to this restitution collection order and this will be fully enforced once you terminate from supervision as well.

*See* September 15, 2023, email from Officer, attached as **Exhibit 11**. She also contended for the first time that "the SSA-1099 indicates you had a gross income of $30,391.20 but reported to the

probation office/Court a gross income from SSI prior to the filing of your 2022 Income Tax Return an income of $24,099.60. This is a difference of $6,291.60 meaning an outstanding amount in additional unpaid restitution due is $629.16. Therefore, your total outstanding past due restitution balance is $2,388.88." *Id.*

14.     The Officer refused to consider that I had made the payments I claimed to have made the prior week "unless you forward your emailed receipts of these payments for consideration. This unfortunately leaves an outstanding past due balance of $629.16. While I understand the importance of travel for you to be with your daughter which appears to be for a very important event in her life, the importance of compliance with court orders and payments toward your obligated restitution is of the utmost importance to our courts and the victim(s) in this case... At this juncture, your request for travel is denied and will not be considered until your past due restitution obligation is up to date with verified payments provided for this officer to review." *Id.*

15.     Thus, with 19 days prior to the travel I had requested, and 25 days after I first requested permission to travel, I was told I would not just have to pay more, but that I would be denied until I could prove the checks had cleared.

### My Request to Travel Should be Granted

16.     Under 18 U.S.C. § 3583(d)(1), conditions of supervised release should be reasonably related to the sentencing factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). Those factors are:

| | |
|---|---|
| (a)(1) – | the nature and circumstances of the offense and the history and characteristics of the defendant; |
| (a)(2)(B) – | to afford adequate deterrence to criminal conduct; |

(a)(2)(C) –   to protect the public from further crimes of the defendant; and

(a)(2)(D) –   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Denying me the right to visit my youngest child (only my fourth trip outside of the District in over 20 months) serves none of the sentencing factors identified in the statute.

17.    The constitutional right to travel from one State to another is firmly embedded in American jurisprudence and is a "virtually unconditional personal right." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quoting *United States v. Guest*, 383 U.S. 745, 757 (1966)). That right includes "[t]he right to travel locally throughout public spaces and roadways." *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002); *see also United States v. Lizardi-Maldonado*, 275 F. Supp. 3d 1284, 1296 (D. Utah 2017) ("Many restrictions can infringe on a person's liberty beyond just detention, including the liberty inherent in the right to travel, to work, and to choose where to live," *citing Williams v. Fears*, 179 U.S. 270, 274 (1900)). While supervised release can lawfully infringe on a supervisee's constitutional rights, such an infringement should not involve a "greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d)(2).

18.    Travel restrictions on supervised release should be "reasonably related to rehabilitating the defendant and protecting the public," *United States v. Monas*, Case No. 99-1752 (2d Cir. May 18, 2000), 2000 U.S. App. LEXIS 11442, at *6-7. I have traveled three times now since I began supervised release, and no trip has created any problem.  My offense had nothing to do with traveling to another location, and no accusation of misconduct related to any of the trips has been raised. Denying me travel to be with my adult daughters does not serve the goals of rehabilitation nor protect the public. What it does do is punishes me and my daughters,

and lays the groundwork for a rocky relationship for both Ashley and me with her prospective in-laws.

19.      . My daughter Ashley has planned this weekend for many months. It is an opportunity for Ashley, her older sister Marian and I to develop a relationship with her fiancée and his family. The women will help Ashley select her wedding dress and all of us will assist the couple in selecting a reception venue, suggesting florists, and participating in as many of the myriad decisions about the wedding ceremony and reception as the couple wants us to. The weekend has been planned, including making reservations more than a month in advance for bridal shops and other wedding vendors who see customers on a reservation-basis only.

20.      The embarrassment and disappointment that Ashley will experience because her mother is not allowed to be with her daughter and prospective in-laws for this occasion is likely to undo many of my efforts in the last year and a half to rebuild my relationship with my children and grandchildren. My daughter Marian, who has two young children, has been especially affected by my incarceration and will respond to my being denied permission to travel to see my family as being evidence that I continue to engage in misconduct.

21.      There is little doubt that rebuilding strong and healthy family relationships is one of the goals of post-incarceration rehabilitation. *See, e.g.,* The Second Chance Act of 2008, 42 USC §§ 17501, *et seq.* (purpose of Act includes "to rebuild ties between offenders and their families, while the offenders are incarcerated and after reentry into the community, to promote stable families and communities." *Stanko v. Davis*, Civil Action No. 08-cv-02659 (D. Colo. Feb. 8, 2010) 2010 U.S. Dist. LEXIS 120025, at *24-25, quoting 42 USC §§ 17501(a)(2); *see also United States v. Giganti*, 405 Fed.Appx 31, 40 (6th Cir. 2010) (court acknowledges supervisee's success in rebuilding family relationships); *United States v. Marr*, Case No. 1:10-cr-00182 (D.

Idaho, Nov. 12, 2021), 2021 U.S. Dist. LEXIS 220068, at *4-5 (same); *United States v. Walton*,

Case No. 09-cr-254-pp (E.D. Wis. Mar. 17, 2020), 2020 U.S. Dist. LEXIS 45792, at *9 (same

holding). But this goal is being sacrificed in favor of the Probation Office's demand that I "pay

to play," that is, pay restitution amounts the Officer says are past due before my request to travel

will be considered. **Exhibit 11,** p.2.

22.     When I voluntarily paid the amount I actually owed for calendar year 2022

($308.19) (*see* **Exhibit 8**), the Officer demanded that I pay the rest of what she said I owed. I

did so immediately (albeit under protest), sending another $1,451.54 to the Clerk. **Exhibit 10**. It

was not worth missing this important weekend in my daughter's life over the accounting dispute.

But rather than accepting my good-faith effort, the Officer "moved the cheese," coming up for

the first time with another $629.16 I allegedly owed. And although I have made payment by

check every month for 19 months in a row – each payment matching to the penny the amount I

have told the Probation Office I have sent – the Officer refused to consider my travel request

again until the U.S. District Court in Connecticut posts the payments.[5]

23.     As noted, 18 U.S.C. § 3583(d)(2) provides that supervised release restrictions can

lawfully infringe on a supervisee's constitutional rights provided those restrictions do not involve

a "greater deprivation of liberty than is reasonably necessary for the purposes set forth in section

3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)." Those purposes – considering the nature and

circumstances of the offense and the history and characteristics of the defendant, affording

---

[5]     In December 2022, I mailed a check to the Clerk on December 7, 2022. As
reflected in Exhibit 6, the Clerk posted it on December 22, 15 days later. If the Clerk's delay
applies in September, the payment would be posted about September 29, 15 days after mailing,
meaning that the Officer would not consider my travel request until five days prior to the date of
travel.

adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant; and providing the defendant with needed training, care, or treatment, have nothing to do with extracting restitution payments where the money at issue is subject to good-faith dispute. This is not a case where I have been refusing to pay restitution. I have been paying over $700.00 monthly for more than a year (and over $800.00 monthly since January 2023). I have three income streams, social security, part-time employment with income reported on a W-2, and an independent contract with income reported on a Form 1099. My only error in 2022 was failing to add in amounts withheld by Social Security for Medicare and my Treasury garnishment. When the dust settled, I was short in payment of restitution by the amount of $308.19 on a total obligation of $8,846.94. I was short in paying my restitution obligation by 3.67%. This was not misconduct. It was an honest error due in part to Social Security not providing monthly statements to recipients and in part to simple oversight.

24.     Under the circumstances, it would constitute a "greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)" to deny me travel for the purpose of strengthening my family ties over a 3.67% error that I have fixed (and taken steps to ensure will not recur.

25.     Under the conditions of supervision set out in my *Amended Judgment in a Criminal Case,* either the probation office or the court may grant me permission to travel. On two prior occasions, I have asked the court to grant me such permission. I asked the court to do so again without delay, so that my daughter may buy my airline tickets before they increase in price again or become altogether unavailable.

**Restitution Findings**

26.     I also ask the Court to address issues that should be clear, but unfortunately are

not.

(a)     **My restitution obligations are governed by the *Amended Judgment in
        a Criminal Case* (ECF 54), issued December 11, 2018, and not the
        *Judgment in a Criminal Case* (ECF 21), issued May 16, 2018**

(b)     **My obligation to pay 10% of my gross income commenced with gross
        income earned on and after my first day of supervised release,
        January 14, 2022;**

(c)     **The *Amended Judgment in a Criminal Case* (ECF 54), issued
        December 11, 2018, does not require that I pay restitution on income
        earned in a calendar month by the 30th day of that month;**

27.     In her email of September 15, 2023, my Officer contends that my *Judgment in a
Criminal Case*[6] "states 'The defendant shall pay any restitution that is imposed by this judgment,
[jointly and severally with defendants in related cases], in a lump sum immediately.  If the
defendant is unable to pay the full balance in a lump sum, any remaining balance is payable at a
rate of0020not less than $500 per month or 10% of the defendant's gross monthly income,
whichever is greater. *[sic]* The monthly payment schedule may be adjusted based on the
defendant's ability to pay as determined by the probation officer and approved by the Court'."
**Exhibit 11.**

28.     I ask the Court to explain to my Officer that the condition of supervised release
that controls my restitution obligation is found in the *Amended Judgment in a Criminal Case*

------------------------

[6]     My Officer employs the obsolete term "J&C" (for *Judgment and Commitment*) .

(ECF 54), issued December 11, 2018.  It is settled that an amended judgment supersedes and renders moot a preceding judgment. *United States v. Ryan*, 806 F.3d 691, 692 (2d Cir. 2015); *see also US Gen., LLC v. Guideone Mut. Ins. Co.*, Civil Action No. 18-cv-01256-REB-NRN (D. Colo. Mar. 30, 2022), 2022 U.S. Dist. LEXIS 80061, at *13 ("Amended Final Judgment shall supplant and supersede the Final Judgment").

29.     I also ask the Court to explain to the Probation Office that the *Amended Judgment* provides that "[d]uring the term of supervised release, defendant shall pay at a rate of not less than $500 per month or 10% of the defendant's gross monthly income, whichever is greater." I ask the Court to explain that this means that gross monthly income subject to the $500/10% limitation is limited to income earned on or after January 14, 2022, and will include all gross income earned until supervised release terminates.[7]

30.     In her email to me of September 14, 2023 (**Exhibit 9**), my Officer wrote that "restitution as stated in your J&C is due by the 30th of each month of *[sic]* 10% of your gross income or $500 per month, whichever is greater."

31.     Such a provision appears nowhere in the *Amended Judgment in a Criminal Case* (ECF 54), issued December 11, 2018, or, for that matter, in the *Judgment in a Criminal Case* (ECF 21), issued May 16, 2018.  In fact, requirement that restitution for a particular calendar month be paid before that calendar month ends is counterintuitive. In order to make that

---

[7]     This also means that income earned prior to January 14, 2022 – totaling $4,476.16 – that was included in my 2022 gross income for federal income tax purposes is not includable in the gross income on which restitution is owed.  However, I do not ask the Court to wade into the specific amounts that are excludable. If the Court explains to the Probation Office the start date of my obligation, the implications should be clear.

payment, a supervisee would have to complete her calculation of gross income by about the 25th or 26th in order to send a check that was delivered by the 30th. Income that had not been received until after the 25th would still be subject to restitution, but could not yet be calculated with precision.  I should note that in the 20 months prior to September 14, 2023, I had always paid my restitution for a given calendar month early in the subsequent month at the time I calculated my income and reported it to the Probation Office. My Officer knew this.  Indeed, in the 20 months prior to September 14, 2023, she had never told me that restitution for a given calendar month was due by the 30th of that month.

32.     Paying any tax or restitution or other obligation that is based on a percentage of income can only be accomplished after the period in which the income subject to the tax or restitution is to be earned. Nowhere in any Probation Office form or instruction can a requirement that A supervisee must pay restitution based on the month income prior to the end of the month in which the income is to be earned.

   **(d)     My gross income for calendar year 2022 was $92,266.69, and included all of the social security paid to me ($30,391.20);**

   **(e)     The Clerk of the U.S. District Court for the District of Connecticut shows that it collected $7,843.34 in restitution on my account in calendar year 2022**

33.     In her email to me of September 15, 2023 (**Exhibit 11**), the Officer accurately recited that my gross income (for federal tax purposes) for calendar year (tax year) 2022 was $92,666.91.  But then she argued that because my monthly reports only listed the Social Security payments that were deposited into my account ($24,099.60) while my gross Social Security income reported on my Form SSA-1099 was $30,391.20, there was an unreported difference of $6,291.60.  Thus, my gross income was really:

$92,666.91
$ 6,291.60
_____

$98,958.51

However, as is clear from the front page of my 2022 federal tax return (attached as the last page

of **Exhibit 12** as well as the recapitulation I provided my officer on August 29, 2023 (*see*

**Exhibit 4**), my gross income of $92,666.91 fully accounted for the $30,391 gross payment from

Social Security.  I reported:

| | |
|---|---|
| S&A[8] | $  45,000.00 |
| CPA[9] | $    3,952.50 |
| WF[10] | $  13,323,41 |
| SS[11] | $  30,391.00 |
| Total: | $  92,666.91 |

**Exhibit 4.**   It is clear that the $92,666.91 gross income figure for the year 2022 *included* the

gross income from Social Security.  I asked the court to direct the probation offices attention to

the fact that nothing needs to be added to my reported gross income in order to determine my

restitution liability.

34.     I also asked the court to direct that the Probation Office revisit the Clerk's report

set out as **Exhibit 6**.  When it does, the probation office will discover that the Clerk reports that

_____

[8]     The law firm of Schleuter & Associates, for which I perform independent contract
services.

[9]     I performed  independent contract services for Robin Hult, CPA for a few months
in 2022.

[10]     I am employed part-time at Whole Foods.

[11]     Social Security.

payments received during calendar year 2022 totaled $7,843.34, and not the $7506.97 that the

Officer reported that I paid. *See* **Exhibit 5.**

**(e)**   **A payment for restitution owed in a calendar year is to be credited to the payor's obligation for that year, despite it being paid in January of the following year**

35.     In her email to me dated September 14, 2023, my Officer refused to consider my

January 2023 payment – which was intended to cover my 10% obligation for December 2022

income – as part of my 2022 restitution. She provided the following explanation:

> There has been no determination of payments you made for the 2023 year
> therefore, any payments made after December 31, 2022 has no reflection on your
> reported restitution paid for your income on your tax return for 2022 just as I
> wouldn't include or cite any income you made after December 31, 2023 and
> expect it be claimed on your 2022 tax return.

**Exhibit 9.**  Her explanation is similar to arguing that a January 15 quarterly federal income tax

estimated payment cannot be credited to the previous year's taxes because it was paid in the

subsequent year.

36.     I ask the court to direct the probation office to credit restitution payments to the

oldest unpaid restitution obligation, regardless of the calendar year in which that obligation

arose. Payment of my December 2022 restitution obligation in January 2023 was fully consistent

with my restitution obligation made part of the special conditions of supervision, and I asked the

court to so hold.

**Conclusion**

37.     I asked the court to grant me permission to visit with my daughters and Ashley's prospective in-laws on October 4, on the terms described in my travel request attached as **Exhibit 1.**

38.     Beyond that, I request that the Court review the issues related to my restitution with which the Probation Office and I find ourselves at an impasse. For 20 months, I have tried diligently to fulfill my restitution obligations. I do not doubt my Officer's diligence and good faith, but I believe that our problems have become intractable and require the Court's assistance.

39.     I will also be responding at a later date to the allegations made by the government and the probation officer's closed document as previously filed.

WHEREFORE, this *Motion* should be granted. The statements of fact made herein are true, under penalty of perjury.


Executed September 21, 2023

Diane Dalmy
Reg. No. 25737-014
2000 East 12th Avenue, #32
Denver CO 80206
(303) 870-4211
ddalmy@earthlink.net

CERTIFICATE OF SERVICE

I herewith certify pursuant to 28 U.S.C. § 1746 that I have transmitted a manually-signed original of the foregoing *Motion* by causing the same to be hand delivered addressed to the following:

> Clerk of Court
> U.S. District Court for
>     District of Colorado
> 901 19th Street, Room A105
> Denver CO, 80294-3589

and I have served a true and complete copy of the same by depositing said document by first-class mail, postage prepaid, addressed to the following:

J.D. Rowell
Office of United States Attorney
1801 California Street
Suite 1600
Denver, CO 80820

Damillah Williams
U.S. Probation Office
1929 Stout Street, Ste. C-120
Denver CO 80294

The foregoing statements are true under penalty of perjury.

Executed September 21, 2023

Diane Dalmy